
FILED
2016 May-04  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LARRY D. NEWKIRK,       )
                        )
        Plaintiff       )
                        )
    vs.                 )   Case No.  2:14-cv-02285-HGD
                        )
COMMISSIONER, SOCIAL SECURITY   )
ADMINISTRATION,         )
                        )
        Defendant       )

**MEMORANDUM OPINION**

Plaintiff, Larry Dale Newkirk, filed for benefits under Title II and XVI of the Social Security Act alleging an onset date of disability as of October 30, 2008, amended to August 13, 2010.  The application was administratively denied and plaintiff requested a hearing before an Administrative Law Judge (ALJ).  The hearing was held on April 11, 2013, before the Honorable Joseph Heimann.  An impartial vocational expert also appeared at the hearing.  Plaintiff was represented by counsel.  Judge Heimann denied plaintiff's claim on April 24, 2013.  The Appeals Counsel denied review on September 23, 2014.  (Tr. 1-3).  Therefore, this case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## I.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability. *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines

whether the claimant has the RFC to perform past relevant work, 20 C.F.R.

§ 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past

relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds that the

claimant is unable to perform past relevant work, then the analysis proceeds to the

fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the

ALJ must determine whether the claimant is able to perform any other work

commensurate with his RFC, age, education and work experience.  20 C.F.R.

§ 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove

the existence in significant numbers of jobs in the national economy that the claimant

can do given the RFC, age, education and work experience.   20 C.F.R.

§§ 404.1520(g) and 404.1560(c).

Following this five-step procedure, the ALJ found that plaintiff has the

following severe impairment: major depressive disorder.  (Tr. 12).  The ALJ also

found that plaintiff's condition did not meet or medically equal the severity of one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R.

§§ 404.1520(d), 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

(Tr 13-14).  The ALJ further found, based on the entire record, that plaintiff has the

RFC to perform a full range of work at all exertional levels but with the following

nonexertional limitations: plaintiff is limited to work that is simple, routine and

repetitive in a low stress environment, meaning jobs with only occasional decision making or occasional changes in work setting; and plaintiff is limited to work that requires no interaction with the public and only occasional interaction with coworkers.  (Tr. 14).

The ALJ also found that plaintiff is unable to perform any past relevant work.  (Tr. 18).  Based on plaintiff's age, work experience and RFC, and the testimony of a vocational expert (VE), the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including the representative occupations of welder and solderer, materials handler, and store laborer and cleaner.  (Tr. 19).  Therefore, the ALJ concluded that plaintiff has not been under a disability as defined in the Social Security Act.  (Tr. 19).

## II.  Plaintiff's Argument for Reversal

Plaintiff asserts that the ALJ erred by failing to properly evaluate the credibility of plaintiff's complaints of pain consistent with the Eleventh Circuit's Pain Standard.  (Doc. 12, Plaintiff's Brief, at 5-10).

## III.  Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See*

*Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV.   ALJ Findings

The ALJ noted that psychological consultant, Dr. Robert Estock, M.D., opined that plaintiff would be mildly limited in activities of daily living.  (Tr. 13).  In the

Third Party Function Report, plaintiff's mother indicated that he had no problems with his personal care and took care of his dog, but did not feel like doing housework or yard work.  However, he testified that he cooks, shops, takes care of the house and pays the bills.  However, he experiences anhedonia and has some problems getting out of bed.

It was also noted that, in social functioning, plaintiff has moderate difficulties. Dr. Estock stated that plaintiff would be moderately limited in social functioning. (Tr. 13; Ex. 4F at 11).  Plaintiff reported no problems getting along with authority figures.  (Ex. 5E).  However, plaintiff testified that he has been like a "hermit" and that the doctor wants him to get out more.  He reported that he was unable to see his mother when she was in the hospital because he did not want to be around that many people.  (Ex. 7F).  However, he occasionally visits her at home.  Additionally, he testified that he occasionally pays bills in person to get out in public.

In his function report, plaintiff stated that he cooks, runs errands, takes care of his dog, reads, watches television and sleeps during the day.  (Ex. 5E).  He states that he can do household chores but needs to make himself do them to get them done. (Ex. 5E at 4).  He has no social activities and does not want to be around anyone but his wife.  He can maintain attention as long as he wants to, does well with

instructions, gets along with others, and does not handle stress well but is good at handling changes in routine.  (Ex. 5E).

According to the ALJ, at the hearing, plaintiff stated that he was diagnosed with depression in 2004.  However, he initially resisted being placed on medication.  He stated that he had no desire to see anybody or be around anyone anymore and that he had lost desire to pursue any activities.  The ALJ reported that plaintiff testified that he had asked the owner of a company he worked for to lay him off because he needed time off from his 60-hour per week, stressful, fast-paced job.  He planned to go back to work, but he does not care about anything and has no desire to do anything anymore.  He stated that he has looked for jobs and had interviews but has been unable to find work.  He further stated that he may have a problem attending work because he gets tense and anxious easily.  He testified that he sees his primary care provider for medication, and she suggested that he see a psychiatrist if things did not get better.  He stated that his medications are not very effective, but were recently changed.  (Tr. 15).

The ALJ held that plaintiff's treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if plaintiff were, in fact, disabled.  (Tr. 15).

## V.    Discussion

Plaintiff alleges that his disability began on August 13, 2010, due to depression.  (Tr. 41, 46-56, 156).  As noted above, the ALJ found that plaintiff suffered from the severe impairment of major depressive disorder. (Tr. 12).  Plaintiff asserts that the ALJ erred by failing to properly evaluate the credibility of the plaintiff's complaints of pain consistent with the Eleventh Circuit's Pain Standard. (Doc. 12, Plaintiff's Brief, at 5-10).  To the contrary, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision.

The pain standard applies when a claimant attempts to establish disability using his own testimony of subjective symptoms.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.*  If the ALJ decides to discredit the claimant's subjective testimony, he must state explicit reasons for doing so.  *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).  If the ALJ fails to state explicit reasons for discrediting the claimant's subjective complaints of pain, the court must accept the testimony as true.

*Id.* When evaluating subjective complaints, the ALJ may take the claimant's daily activities into account. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

In this case, the ALJ did include the claimant's symptoms in his decision but after consideration, determined that the claimant's reports regarding those symptoms were not credible. *See Sanders v. Astrue*, 974 F.Supp.2d 1316, 1332 (N.D.Ala. 2013). The ALJ noted that plaintiff received little treatment prior to July 2010 and reported that he only had his medication for two months in 2011. He does not receive any counseling and his medications are prescribed by his primary care giver, a nurse practitioner, not a psychiatrist or other mental health professional. His symptoms initially improved with medication, but worsened around the time of increased financial stress.

Plaintiff asserts that he explained his failure to seek more treatment based on his testimony that he could not afford to see his primary care physician, Dr. Lamberson, because it got to where he could not afford to see him anymore and could not afford to pay for his prescriptions. A review of his testimony reflects that plaintiff reached the point where he could not afford Dr. Lamberson because "[h]e was giving me regular prescriptions and not generics, and I got to where I couldn't pay – afford to pay for them and I couldn't afford to go see him either because of what he charged." (Tr. 48). However, he went on to testify that, when this occurred, he

continued to see medical personnel by going to Cooper Green Hospital in Birmingham. Then a pharmacist he knew told him about Christ Health Clinic which would treat him and had an in-house pharmacy, based on his income. According to plaintiff, he started going there and seeing a doctor, while continuing to seek treatment at Cooper Green until his registration with Cooper Green expired. (Tr. 49). Thus, plaintiff's failure to seek more medical attention was not due to his lack of financial ability except for the occasion in 2011 which was noted by the ALJ. (Tr. 16).

The medical evidence reflects that Dr. Randolph Lamberson, M.D., diagnosed plaintiff with chronic stress in August 2010 and prescribed medication. (Tr. 216). In September 2010, plaintiff reported improved symptoms with no complaints. (Tr. 214-15). He next returned to Dr. Lamberson in February 2011 and complained of stress, hypersomnia and nightmares. (Tr. 207-08). Dr. Lamberson changed plaintiff's medication. By the end of the month, plaintiff reported no complaints for hypersomnia, anhedonia or apathy. He also had no difficulty functioning at work and no emotional concerns. (Tr. 205-08).

In August 2011, Alan Blotcky, Ph.D., performed a consultative examination of plaintiff following his complaints of depression. He was described as being cooperative and pleasant during the examination and his attention and concentration

were good. (Ex. 2F at 1-3). Dr. Blotcky diagnosed plaintiff with depressive disorder and mild alcohol abuse and concluded that he could manage his own financial affairs. He concluded that anti-depressant medication and counseling were warranted but described his prognosis as "fair." (Ex. 2F at 3). The ALJ assigned some weight to this opinion but noted that he did not provide an opinion regarding the effects of plaintiff's impairments on his vocational abilities. (Tr. 17). The ALJ found that Dr. Blotcky's examination notes supported his conclusion that plaintiff had moderate mental limitations and was thus suited for unskilled work with only occasional interaction with others. (Tr. 17).

In September 2011, state agency medical consultant, Dr. Robert Estock, M.D., reviewed plaintiff's medical records and concluded that plaintiff could understand, remember and carry out simple instructions; attend and concentrate for two hours on simple tasks with customary breaks. He also stated that plaintiff may benefit from a flexible schedule and that changes should be gradually introduced. (Tr. 302-14, 317-20). According to Dr. Estock, plaintiff's contact and interaction with the public should be casual, and criticism and feedback from supervisors and co-workers in the workplace should be casual and non-confronting. (Tr. 302-14, 317-20). The ALJ gave great weight to Dr. Estock's opinion, finding that it was consistent with the evidence of record. (Tr. 17-18).

In March 2012, plaintiff reported to a new primary care physician at Christ Health Center that his depression medication made him feel better, but never normal. (Ex. 7F at 10). He also indicated that he had run out of unemployment and could not afford his medication so that he only had prescriptions for two months in 2011. (Ex. 7F at 10). He was given a trial sample of Savella. However, when he returned in May 2012, he reported that he did not think it was helping, complaining of marked anhedonia, wanting to sleep all the time and not wanting to be around people very much. (Ex. 7F at 5). He was switched over to Cymbalta and experienced some relief. (Ex. 7F at 5; Ex. 8F at 5). By October 2012, plaintiff reported that he was doing fairly well but still had marked anhedonia. He reported that he could be happy when he was home with his wife and was proud of himself for having been able to save his home from foreclosure. (Ex. 7 at 2). He declined any medication increases. His medication was switched to Wellbutrin. (Ex. 11 at 15).

Based on this, the Court concludes that the ALJ properly considered plaintiff's subjective complaints and adequately explained his reasoning for finding him not entirely credible. (*See* Tr. 15-17). His decision is consistent with the requirements of the Eleventh Circuit's Pain Standard. That is, he concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found his statements concerning the intensity, persistence and

limiting effects of these symptoms were not credible.  He explained that plaintiff's complaints were not supported by the medical evidence and that his activities of daily living were inconsistent with the extent of the limitations that he claimed.  Plaintiff's daily activities include cooking, running errands, household chores, shopping, watching television, reading and taking care of his dog. (Tr. 170-76).  Furthermore, the medical records reflect that his medications were relieving his symptoms, even though they were not completely resolved.  (Tr. 205-08, 214-15, 330, 335).

Plaintiff also testified that he looked for work and had an interview, but did not get the job.  *See* 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or non-treating source, and observations by our employees and other persons."); SSR 96-7p, 1996 WL 374186 at *5 (in assessing the credibility of an individual's statements about pain or other symptoms, the adjudicator should consider statements about the individual's "prior work record and efforts to work").

The Court concludes that the ALJ applied the correct legal standards in evaluating plaintiff's claims and substantial evidence supports the ALJ's finding that plaintiff is not disabled.

## VI.    Conclusion

Because the ALJ's decision is supported by substantial evidence, the decision

of the Commissioner is due to be AFFIRMED.  A separate order will be entered.

DONE this 4th day of May, 2016.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE